# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CASE NO. 5:22-CV-00067-FDW

SARAH TEAGUE,                              )
                                           )
            Plaintiff,                     )
                                           )
    v.                                     )                **ORDER**
                                           )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
            Defendant.                     )
_____)

THIS MATTER is before the Court on Claimant Sarah P. Teague's ("Claimant") Motion for Summary Judgment, (Doc. No. 7), filed on October 3, 2022, and Defendant Acting Commissioner of Social Security's (the "Commissioner") Motion for Summary Judgment, (Doc. No. 9), filed on November 21, 2022. Claimant, through counsel, seeks judicial review of an unfavorable decision denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").

The motions have been fully briefed, (Doc. Nos. 8, 10), and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth herein, Claimant's Motion for Summary Judgment, (Doc. No. 7), is GRANTED; the Commissioner's Motion for Summary Judgment, (Doc. No. 9), is DENIED; and the Commissioner's decision is REMANDED.

## I.      BACKGROUND

On January 13, 2020, Claimant filed a Title II application for a period of disability and DIB, alleging disability beginning March 1, 2018. (Tr. 10) After her application was denied both initially and upon reconsideration, Claimant requested a hearing by an Administrative Law Judge

("ALJ").  (Id.).  On June 17, 2021, the ALJ held a telephone hearing, and on July 12, 2021, she issued an unfavorable decision, finding Claimant was not disabled under the Act.  (Tr. 10–20).

Employing the five-step sequential evaluation process for determining whether an individual is disabled under the Act, the ALJ found, at step one, that Claimant did not engage in substantial gainful activity between her alleged onset date (March 21, 2018) and her date last insured (March 31, 2020).  (Tr. 12).  At step two, the ALJ found three of Claimant's physical medically determinable impairments ("MDIs") to be severe: "irritable bowel syndrome, history of recurring interstitial cystitis ["IC"], and obesity."  (Id.).  The ALJ also determined that Claimant had a mental MDI of depression.  (Tr. 13).  Under step three, the ALJ determined none of Claimant's MDIs, nor any combination of MDIs, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

At step four, the ALJ found Claimant had the residual functional capacity ("RFC") to perform light work except that she could only occasionally climb, crouch, and crawl and only frequently stoop and kneel.  (Id.).  The ALJ found Claimant could tolerate only frequent exposure to extreme heat, cold, wetness, humidity, vibration, pulmonary irritants (such as dust, fumes, odors, and gases), and workplace hazards (such as unprotected heights and dangerous moving machinery).  (Tr. 14–15).

During this step four analysis, the ALJ considered the medical opinion of Dr. Robert Evans, who opined that Claimant's RFC ought to be merely "sedentary."  (Tr. 17).  However, the ALJ deemed his opinion to be "unpersuasive."  (Id.).  The ALJ discounted Dr. Evans' medical opinion because Dr. Evans had limited interaction with Claimant, the diagnoses supporting Dr. Evans' opinion were outside of the timeframe in question, and Dr. Evans' opinion was inconsistent with other evidence in the record.  (Id.).

2

The ALJ then determined Claimant, with her RFC to perform light work, could return to three of her prior jobs; she also identified three other categories of jobs that Claimant could work at in step five. (Tr. 18–19). Because Claimant could still work in these roles, the ALJ concluded Claimant was not disabled, as defined by the Act, at any time during the alleged period of disability. (Tr. 20).

After Claimant's subsequent request for review was denied by the Appeals Council, the ALJ's decision became the final decision of the Commissioner. (Tr. 1–6). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of

3

evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's [RFC] before proceeding to step four, which is the most the claimant can still do despite her physical and mental limitations that affect her ability to work." Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (cleaned up). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

4

[The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets his or her burden as to past work, the ALJ proceeds to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations.

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

5

### III.    ANALYSIS

On appeal, Claimant identifies two assignments of error: (A) the ALJ failed to provide substantial evidence to support her decision to discount Dr. Evans' testimony, and (B) the ALJ failed to account for Claimant's IC when determining her RFC.  As explained below, the Court agrees with Claimant's first assignment of error and holds that remand is warranted based on this issue alone; the Court makes no determination on Claimant's second assignment of error.

#### A.  Dr. Evans' Medical Opinion

Claimant asserts the ALJ failed to provide substantial evidence to support her decision to discount Dr. Evans' testimony.  The ALJ provided three reasons for discounting Dr. Evans' medical opinion: (1) Dr. Evans had limited contact with Claimant; (2) Dr. Evans based his assessment on conditions "not documented in the record" during the period in question; and (3) "[m]ost importantly," Dr. Evans' medical opinion was "inconsistent with the record."  (Tr. 17).  The Court will address each of these assertions in turn.

1.  *Dr. Evans' Contact with Claimant*

When an ALJ renders a decision on a Claimant's DIB claim, they must "build an *accurate* and logical bridge from the evidence to [their] conclusion."  Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis added).  Accuracy is required when building this bridge; inaccurate statements cannot suffice as justifications.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 270 (4th Cir. 2017) (reversing the ruling of an ALJ due to "instances of inaccuracy and unreasonableness in the ALJ's adverse credibility finding" of a claimant); cf. Hicks v. Heckler, 756 F.2d 1022, 1025 (4th Cir. 1985) ("The ALJ seems to have decided the case on the basis of claimant's purported testimony, but his summary of the testimony is not an accurate description

Case 5:22-cv-00067-FDW   Document 12   Filed 05/26/23   Page 6 of 10

of what claimant said.  The district court wisely ignored this basis of the ALJ's decision . . . ."), overruled on other grounds by Lively v. Bowen, 858 F.2d 177 (4th Cir. 1988).

Here, the ALJ "failed to build an *accurate* and logical bridge from the evidence to [her] conclusion" that Dr. Evans' medical opinion was not persuasive.  See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasis added) (internal quotation marks omitted).  The ALJ inaccurately concluded Dr. Evans' contact with Claimant was limited to just two visits, and that one of these visits was not in person.  (Tr. 17).  The record indicates otherwise.

Dr. Evans personally interacted with Claimant on several occasions.  He first saw Claimant on January 3, 2019, and diagnosed her with IC.  (Tr. 1563–1566).  To treat her IC, he prescribed several medications, a hydrodistention procedure, and 6–12 physical therapy sessions.  (Tr. 1565– 1566).  Claimant then went to ten physical therapy sessions at Dr. Evans' direction.  (Tr. 1539– 1560).  Dr. Evans next saw Claimant on October 24, 2019, where he prescribed more medications and a cystoscopy along with another hydrodistention procedure.  (Tr. 1531–1534).  Later, Dr. Evans was present as Claimant underwent this cystoscopy with hydrodistention on December 13, 2019.  (Tr. 1527–1528).

Dr. Evans' nurse also saw Claimant on several occasions.  She first saw Claimant on January 13, 2020, and prescribed additional medications.  (Tr. 1516–1518).  She saw Claimant again through videocall due to the COVID-19 pandemic on April 22, 2020, and Claimant reported some improvement in her symptoms.  (Tr. 1704–1705).  Dr. Evans' nurse then saw Claimant in person on July 30, 2020, and Claimant reported that her IC symptoms remained high.  (Tr. 1696– 1697).  The nurse also talked to Claimant via phone call on August 21, 2020, and Claimant reported some improvement in her symptoms.  (Tr. 1691–1692).

The ALJ's assertion that Dr. Evans only saw Claimant once in person and once virtually is erroneous. As shown in the record, Dr. Evans saw Claimant at least three times in person, and his nurse saw Claimant twice in person and twice more virtually. Because it is erroneous, the ALJ's assertion that Dr. Evans had limited contact with Claimant cannot suffice as a reason for discounting Dr. Evans' medical opinion.

### 2. *The Basis of Dr. Evans' Opinion*

The ALJ concluded Dr. Evans based his medical opinion on conditions the record indicates were not present until after the period in question. (Tr. 17). Specifically, the ALJ found that Dr. Evans' opinion was based on pyelonephritis, (id.), which did not appear in the record during the time in question. However, this conclusion is also erroneous.

Contrary to the ALJ's conclusion, Dr. Evans did not base his RFC medical opinion on a pyelonephritis diagnosis. Rather, Dr. Evans cited other diagnoses and medical findings in support of his opinion, including IC, pelvic exams, a tight and painful pelvic floor, abdominal pain, dyspareunia, dysuria, urinary frequency and urgency, and vaginal pain. (Tr. 2849). Because it is erroneous, the ALJ's determination that Dr. Evans' opinion was based on diagnoses outside of the period in question cannot suffice as a reason for discounting Dr. Evans' medical opinion.

### 3. *Dr. Evans' Opinion and Other Evidence Within the Record*

The ALJ asserted that, "[m]ost importantly, [Dr. Evans'] medical opinions are inconsistent with the record that does not support such marked limitations suggested [sic], and indicates the claimant has other restrictions, such as environmental limitations, Dr. Evans does not address." (Tr. 17). However, the ALJ failed to cite any specific inconsistencies between Dr. Evans' opinion and the record. Her conclusion therefore lacks the specificity required for adequate review by this Court. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (stating that a "necessary

predicate to engaging in substantial evidence review" is that the ALJ must have evaluated specific pieces of evidence; remand is appropriate when the ALJ fails to provide such evaluation). Due to the ALJ's failure to cite specific inconsistencies, there is not substantial evidence to support the conclusion that Dr. Evans' medical opinion is inconsistent with the record; remand is therefore appropriate. Cf. Fox v. Colvin, 632 F. App'x 750, 755 (4th Cir. 2015) (vacating an ALJ's decision when it was based on a mere "conclusory analysis" that was "perfunctory and offered nothing to reveal *why* [the ALJ] was making his decision" (emphasis in original)).

"[T]he ALJ must build an accurate and logical bridge from the evidence to [her] conclusion that [Dr. Evans' opinion] was not credible—which the ALJ wholly failed to do here." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks omitted). Because the ALJ failed to provide substantial evidence in support of her decision to discount Dr. Evans' medical opinion, this Court hereby remands this action so that the ALJ can more clearly and accurately explain her findings and reasoning regarding Dr. Evans' opinion.

### B. The RFC Determination

Claimant also asserts the ALJ failed to account for Claimant's IC when determining her RFC. In light of the Court's decision to remand on Claimant's first assignment of error, the Court declines to address this second assignment of error. As discussed above, the reasons proffered for discounting Dr. Evans' medical opinion were erroneous and insufficient. This improper devaluation of Dr. Evans' opinion may have affected the ALJ's determination of the RFC, which is at issue in Claimant's second assignment of error. The Court declines to address the second assignment of error and the ALJ is free to revisit the RFC on remand.

9

## IV.    CONCLUSION

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405 (g), the Court does not take a position on the merits of Claimant's application for DIB.  The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand.  <u>See, e.g.</u>, <u>Newton v. Apfel</u>, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)).  The Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the previous decision in the new decision issued upon remand.  "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision."  <u>Shalala v. Schaefer</u>, 509 U.S. 292, 299 (1993) (quoting <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 624–25 (1990)).

IT IS THEREFORE ORDERED that Claimant's Motion for Summary Judgment, (Doc. No. 7), is GRANTED IN PART; the Commissioner's Motion for Summary Judgment, (Doc. No. 9), is DENIED; and the ALJ's determination is REMANDED to the Commissioner for further proceedings consistent with this Order.

IT IS SO ORDERED.

Signed: May 25, 2023

Frank D. Whitney
United States District Judge

10